\* **NOT FOR PUBLICATION** \*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON MORGAN <br><br>    Plaintiff, <br><br> v. <br><br> RAYMOND MARTINEZ, in his official capacity as Chair and Chief Administrator of the New Jersey Motor Vehicle Commission <br>    Defendant. | Civ. No. 3:14-02468 (FLW/DEA) <br> OPINION |

**WOLFSON, United States District Judge:**

Presently before the Court is a motion to dismiss filed by Defendant Raymond Martinez, in his official capacity as Chair and Chief Administrator of the New Jersey Motor Vehicle Commission ("the MVC" or "the State"). The MVC seeks to dismiss the Amended Complaint filed by Plaintiff Shannon Morgan ("Morgan," or "Plaintiff") that facially challenges the validity of a New Jersey administrative provision prohibiting the display of personalized license plates that are "offensive to good taste and decency." The MVC moves to dismiss the Amended Complaint on the following bases: (1) lack of standing and (2) failure to state a claim.

For the following reasons, the MVC's motion is denied in part and granted in part. Count Two of the Amended Complaint is dismissed for failure to state a claim; all other claims may proceed.

**I.    Background**

The following allegations are taken from the Amended Complaint and are accepted as true for the purposes of this motion to dismiss. Shannon Morgan is a resident of New Jersey. Am. Compl. ¶ 7. New Jersey requires every owner of an automobile driven on public highways in the state to display a license plate depicting the vehicle's unique registration number. N.J. STAT. ANN. § 39:3–

1

33; *see also* Am. Compl. ¶ 3. The Chief Administrator of the Motor Vehicle Commission ("the MVC" or "the Commission") is authorized by statute to "issue, upon application, registration plates of a particular identifying mark or marks . . . composed of such combination of letters and figures, in accordance with the identification system as may be requested in such application." N.J. STAT. ANN. §§ 39:3–33.3, 39:2A-4. The statutory scheme charges the Chief Administrator with promulgating "rules and regulations for effectuating the purposes" of the statute. *Id.* §§ 39:3–33.5, 39:2A-4. By statute, only registration numbers already "issued to and held by some other person or otherwise reserved" by the Chief Administrator are prohibited from being issued on a personalized license plate. However, the New Jersey Administrative Code prohibits personalized license plates from displaying "[a]ny combination of alphabetic characters or numbers, or both, that may carry connotations offensive to good taste and decency." N.J. Admin Code §13:30-34.3(a)(35) ("the Rule").

Morgan is an atheist and wishes to identify and express herself as such on her vehicle's license plate. *Id.* ¶ 8. To that end, in November 2013, Morgan applied for a license plate through the MVC's website, though which a vehicle owner can select a combination of "at least three letters and a maximum of seven characters in combination of letters and numbers," to "personalize [her] plate for a one-time fee of $50, in addition to the regular registration fee."[1] *Personalized Plates*,

---

[1] According to Morgan, the MVC's website cautions that "[n]o personalized plate combination, which is considered offensive, will be approved for issuance." Am. Compl. ¶ 17 (citing *Information about Personalized License Plates*, N.J. MOTOR VEHICLE COMM'N (July 2010), http://www.state.nj.us/mcv/pdf/Vehicles/SP-2.pdf). The Court is unable to access the link provided. However, upon an independent online search, the Court has found the following, apparently updated, MVC document entitled *Information about Personalized License Plates*, which states that "[a]ny combination of alphabetic characters or numbers, or both, that may carry connotations offensive to good taste and decency will be rejected." *Information about Personalized License Plates*, N.J. MOTOR VEHICLE COMM'N, http://www.state.nj.us/mvc/pdf/Vehicles/SP-2.pdf (last accessed May 12, 2015).

N.J. MOTOR VEHICLE COMM'N, http://www.state.nj.us/mvc/Vehicle?PersonalizedPlates.htm (last accessed May 7, 2015); Am. Comp. ¶¶ 16, 18. Following instructions on the website, Morgan entered "8THEIST" as the text to appear on her personalized plate. *Id.* ¶ 18. However, the MVC's website responded by preventing her from continuing the application process and stating that the "[r]equested plate text is considered objectionable."[2] *Id.* ¶ 19.

On the day that Morgan attempted to apply for her personalized license plate, Morgan wrote an email to the MVC though its website to inquire about the rejection of her proposed "8THEIST" plate and to ask for assistance in obtaining the plate.[3] *Id.* ¶ 22. According to Morgan, the MVC responded to her email on November 25, 2013, by instructing her to call the MVC's Special Plate Unit for assistance with her request. *Id.* ¶ 22. Morgan alleges that on at least one occasion, she called the Special Plate Unit at the phone number provided in the MVC's November 25th email and spoke with a representative, who told her that she would receive a return phone call from the MVC within the next 24 hours. *Id.* ¶ 23. However, Morgan states that she "did not receive the promised call from anyone at the Commission." *Id.*

Morgan alleges that on or about March 5, 2014, she sent the MVC's Customer Advocacy Office a letter via certified mail with return receipt requested. *Id.* ¶ 24. In the letter, Morgan reiterated her desire to obtain a personalized "8THEIST" plate and asked why the plate was prohibited as "objectionable." *Id.* Morgan received the return receipt confirming that the letter was

---

[2] Morgan states that, "[c]onfused about why the Commissioner considered her proposed plate objectionable, . . . Morgan entered 'BAPTIST' and discovered that the website did not flag this proposal as 'objectionable.' Instead, it displayed a preview of a personalized license plate reading 'BAPTIST' and permitted her to continue the application." Am. Compl. ¶ 20.

[3] Morgan alleges that the Commission's website does not provide any instructions for appealing the denial of a personalized license plate application. Am. Compl. ¶ 36.

delivered to the MVC. *Id.* However, Morgan alleges that she received no response from the MVC, "which continued to prohibit her from obtaining her requested plate."[4] *Id.*

On April 17, 2014, Morgan filed this lawsuit, alleging that "the Commission's denial of her '8THEIST' license plate and the regulatory scheme underlying that denial violates the First Amendment's Establishment Clause, Free Exercise Clause, and Free Speech Clause, and the Fourteenth Amendment's Equal Protection Clause." *Id.* ¶ 25. After the State was served with the Complaint, the MVC notified Morgan that it would issue her "8THEIST" license plate if she would submit an application for the plate by mail.[5] *Id.* ¶ 26.

---

[4] Morgan also alleges that her "application for a personalized license plate is not the first one that the Commission has denied on the grounds that it considers a variation of the word 'atheist' offensive." Am. Compl. ¶ 27. Rather, Morgan alleges that in 2013, "David Silverman, president of American Atheists and a resident of New Jersey, applied for a personalized New Jersey license plate that read 'ATHE1ST' (the word 'atheist' with the number 1 substituted for the letter I)." *Id.* 28. "On August 26, 2013, the Commission sent Mr. Silverman an email informing him that his application for an 'ATHE1ST' license plate 'must be denied.' The email stated, 'Reason for Denial: Objectionable or Need for Further Clarification." *Id.* ¶ 29. According to Morgan, upon receiving this rejection email, "Mr. Silverman called the Commission and was informed over the phone that the Commission considered his proposed license plate 'offensive.' Mr. Silverman sent the Commission a letter reiterating his request for an 'ATHE1ST' license plate." *Id.* ¶ 30. Morgan alleges that "[a]fter the Commission's denial of Mr. Silverman's application began to attract public attention and a reporter from the *International Business Times* questioned the commission about it, the Commission relented ant told the reporter, and later Mr. Silverman, that it would reverse its decision and issue the 'ATHE1ST' plate." *Id.* ¶ 31.

[5] In a certification attached to the MVC's motion to dismiss, Jacquelynn Prasak, the manager overseeing the Special Plate Unit, states that "[a] computer issue" caused the MVC's website to categorize the personalized '8THEIST' license plate requested by plaintiff Shannon Morgan . . . as 'objectionable.'" Prasak Certif. ¶ 11.
Whether the Court may properly consider the documents offered as evidence by Defendants depends on whether they are integral to, or relied upon, in Plaintiff's claims. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that a district court may only use a "document integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a motion for summary judgment). Here, Prasak's certification is not integral to, or relied upon, in Plaintiff's Amended Complaint. Thus, the certification, and, therefore, the MVC's proffered reasons for initially denying Plaintiff's '8THEIST' license plate, will be disregarded for the purposes of this motion to dismiss.

On September 19, 2014, Plaintiff filed an Amended Complaint. Plaintiff alleges that when she "applies for personalized license plates in the future, she will again be subjected to the commission's rule banning license plates 'offensive to good taste and decency,'"[6] and contends that the MVC has not "amended or repealed its regulation that grants Commission officials the discretion to prohibit 'offensive' license-plate expressions." *Id.* ¶¶ 26, 38. Plaintiff also alleges that, "[o]n information and belief, the MVC also has, on several occasions, applied the 'offensive to good taste and decency' standard to revoke existing personalized license plates. Thus, . . . Morgan's '8THEIST' license plate and any future plate she may acquire for herself or her daughter will remain subject to revocation pursuant to this provision even once in her possession." *Id.* ¶ 39.

In that connection, Plaintiff asserts that the Rule is facially unconstitutional under the First and Fourteenth Amendments because it (1) is overbroad, (2) grants government officials unbridled discretion to prohibit speech based on the speaker's viewpoint, (3) is void for vagueness, and (4) imposes a prior restraint on protected speech without ensuring that applicants will receive a decision on their requests for reconsideration within a short and specified time frame. *Id.* ¶¶ 26,

---

[6] Further, Morgan contends that as of the date of the filing of the Amended Complaint, "the Commission's website continues to reject '8THEIST' if it is entered into the website's online license plate application form." *Id.* ¶ 34. According to Morgan, the website apparently continues to state "Requested plate text is considered objectionable" in response to the application. *Id.* ¶ 34.

The MVC responds to Morgan's contention by attaching a "Reply Certification," again from Jacquelynn Prasak. In the certification, Prasak (1) blames Morgan's continued inability to successfully request the '8THEIST' license plate on the fact that "[t]he MVC's website was not updated due to a misunderstanding concerning the litigation hold for this case and (2) attaches "a screenshot from the MVC's website that shows the '8THEIST' license plate 'is not available,' because it is being reserved for Morgan." Prasak Reply Certif. ¶¶ 4, 5. Further, Prasak states that "[t]o date, Morgan has not submitted a written application to the MVC for the '8THEIST' license plate." *Id.* ¶ 6.

Like Prasak's certification, Prasak's reply certification is not integral to, or relied upon, in Plaintiff's Amended Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. Thus, the reply certification, and, therefore, the MVC's proffered reason for continuing to reject Plaintiff's '8THEIST' license plate as objectionable, will be disregarded for the purposes of this motion to dismiss.

5

40–52. The MVC moved to dismiss the Amended Complaint on the following bases: (1) standing and (2) failure to state a claim.

## II.     Standard of Review

### a. *Rule 12(b)(1) and Standing*

A motion to dismiss based on a plaintiff's lack of standing is brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("'A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.'") (quoting *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007)). "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotation marks omitted).

Generally, to demonstrate the "case or controversy" standing requirement under Article III, § 2 of the United States Constitution, a plaintiff must establish that she has suffered (1) a cognizable injury that is (2) causally related to the alleged conduct of the defendant and is (3) redressable by judicial action. *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *The Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000). A plaintiff will fail to meet this requirement if the plaintiff merely raises a "generally available grievance about government-claiming only harm to his and every citizen's interest in proper application of the Constitution and

laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992).

In addition to the Article III "case or controversy" requirement, prudential limitations stand as judicially imposed limitations on a court's power to hear and decide a case. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Third Circuit requires parties to satisfy the following three-part test to determine whether prudential standing exists.

> First, prudential standing requires that a litigant assert his or her own legal interests rather than those of a third party. Second, courts refrain from adjudicating abstract questions of wide public significance amounting to generalized grievances. Third, a plaintiff must demonstrate that his or her interests are arguably within the "zone of interests" that are intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

*Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir. 2003) (citing *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir. 2003)).

However, when a plaintiff asserts a claim that a particular statute or regulation is facially overboard,[7] courts apply relaxed standards in the prudential standing context. "Litigants asserting facial challenges involving overbreadth under the First Amendment have standing where 'their own rights of free expression are [not] violated' because 'of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 238 (3d Cir. 2010) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)); *see also Pitt News v. Fisher*, 215 F.3d 354, 363 (3d Cir. 2000) ("[W]hen a plaintiff attempts to challenge a statute as being an overbroad restriction on First Amendment rights, the requirement that an impediment exist to the third party asserting his or her own rights should be relaxed[.]") (citing

---

[7] The Court examines the contours of the facial overbreadth doctrine in its Rule 12(b)(6) analysis *infra*.

7

*Sec'y of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956–57 (1984)); *Amato v. Wilentz*, 952 F.2d 742, 753 (3d Cir. 1991) ("The Supreme Court rather freely grants standing to raise overbreadth claims, on the ground that an overbroad . . . regulation may chill the expression of others not before the court.").

To be clear, the constitutional standards for standing are not relaxed when a plaintiff is asserting an overbreadth claim. The "[o]verbreadth doctrine effectively allows a party to challenge separate and hypothetical applications of a regulation only when an otherwise valid application of that same regulation causes the party injury-in-fact. It does not allow a party to challenge a regulation that is wholly inapplicable to the party, regardless of the regulation's location in the statute books." *Serv. Employees Int'l Union, Local 3 v. Municipality of Mt. Lebanon*, 446 F.3d 419, 424–25 (3d Cir. 2006).

    *b. Rule 12(b)(6)*

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court has explained that principle. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court

considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim. *Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (citations and quotations omitted).

**III.   Analysis**

   *a. Standing*

The MVC argues that "[b]ecause [Plaintiff] has not applied for a personalized license plate other than the '8THEIST' one, she has no standing to challenge the Rule on its face . . . ." State's Br. at 7. As a corollary argument, the MVC argues that Plaintiff lacks standing to challenge the initial rejection of the '8THEIST' license plate, because the MVC later approved the issuance of the plate, and, thus Plaintiff suffered no injury from the initial rejection.

The Court will begin by determining whether Plaintiff has asserted a cognizable injury, also known as an injury-in-fact for the purposes of constitutional standing. "Constitutional standing

9

requires an 'injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41–42 (3d Cir. 2011) (quoting *Danvers Motor Co. v. Ford Motor Co.,* 432 F.3d 286, 290–291 (3d Cir. 2005)); *see also Lujan,* 504 U.S. at 560–561. In the facial overbreadth context, courts have found that an injury in fact may be demonstrated if the regulation in question applies to the plaintiff—for example, by if the plaintiff's speech may be chilled by the regulation, *see McCauley*, 618 F.3d at 238–39, or if the plaintiff intends to engage in conduct that would subject him to the application of the allegedly overbroad regulation, *cf. Serv. Employees Int'l Union, Local 3 v. Municipality of Mt. Lebanon*, 446 F.3d 419, 424 (3d Cir. 2006) (finding that the plaintiff lacked standing because it failed to articulate a desire or intention to engage in conduct that would subject it to the challenged regulation).

In her Amended Complaint, Plaintiff asserts the following factual allegations in support of her argument that she has asserted an injury-in-fact in regards to the Commission's application of the Rule. First, she intends to "continue participating in the personalized-license-plate program by selecting different messages for her vehicle's plates in the future, and by requesting a personalized plate for the vehicle she plans to purchase for her daughter's car. Am. Compl. ¶ 3. Second, "[o]n information and belief, the Commission . . . has, on several occasions, applied the "offensive to good taste and decency" standard to revoke existing personalized license plates," and, thus, Plaintiff's "'8THEIST' license plate and any future plate she may acquire for herself or her daughter will remain subject to revocation pursuant to this provision even once [the plate] is in her possession." *Id.* ¶ 39.

The Court finds that Plaintiff's factual allegations are sufficient to establish an injury-in-fact for the purposes of this motion to dismiss. Plaintiff's intention to continue to participate in the

personalized license plate program places her within the ambit of the enforcement of the Rule and, thus, qualifies as an alleged future injury, particularly in light of the MVC's initial denial of Plaintiff's request, its initial denial of fellow atheist Silverman's request, and its continued classification of the '8THEIST' license plate as offensive on its website.

The Western District of Michigan's decision in *Matwyuk v. Johnson*, 22 F.Supp.3d 812 (W.D. Mich. May 23, 2014), which considered a strikingly similar set of facts, is persuasive. In that case, the plaintiff, Matwyuk, had applied for a vanity license plate, 'INF1DL,' under a regulation that prohibits plates that are "offensive to good taste and decency." *Id.* at 816. The Michigan Department of State initially denied Matwyuk's request, and while the agency later reversed itself and issued the 'INF1DL' plate after Matwyuk filed his lawsuit, the court found, for the purposes of the motion to dismiss, that Matwyuk had adequately alleged standing to pursue his claim that the regulation was facially overbroad. *Id.* at 816–18. The Court rested its conclusion on the following facts: (1) Matwyuk's stated intention to apply for a future personalized plate, and (2) the agency's history of denying Matwyuk's prior request on the basis that the requested plate was "offensive to good taste and decency," notwithstanding the agency's post-hoc argument that the denial was an "administrative error." *Id.* at 817–18 (citing *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 2456 (2011)). The court reasoned that on those alleged facts, Matwyuk had "shown a 'significant possibility' that the Department of State would apply the 'offensive to good taste and decency' restriction to his [future] license plate application because it had applied the restriction to his original vanity plate application." *Id.* at 818. Just as in *Matwyuk*, Plaintiff has stated an intention to apply for a future personalized license plate and has

11

demonstrated the MVC's history of denying her '8THEIST' plate, notwithstanding the MVC's argument that the initial denial was a "computer issue".[8]

In fact, Plaintiff has alleged even stronger facts in support of her injury in fact than the plaintiff in *Matwyuk*. First, Plaintiff has alleged more extensive past enforcement of the Rule by the MVC: Plaintiff has alleged that the MVC continues to deny the '8THEIST' plate on "offensive" grounds when she applies for the plate online and that Silverman, a fellow atheist, had his 'ATHE1ST' plate initially denied on "offensive" grounds, as well. *See Lopez*, 630 F.3d at 786 (finding "past enforcement of a restriction to be strong evidence . . . that pre-enforcement plaintiffs face a credible threat of adverse state action"). Further, unlike the plaintiff in *Matwyuk*, Plaintiff has also alleged that she continues to be subject to the Rule because she alleges that the MVC has discretion to revoke her '8THEIST' plate on "offensive" grounds. *Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1200 n.12 (11th Cir. 1991); *see also* Wright & Miller, § 3531.9.4 Rights Of Others — Severability and Overbreadth, 13A FED. PRAC. & PROC. JURIS. § 3531.9.4 (3d ed.) ("Even a plaintiff who has acquired approval may have overbreadth standing, at least if there is a risk that the approval may be revoked.").

The MVC attempts to distinguish *Matwyuk* on the grounds that unlike the plaintiff in that case, who alleged that he possessed a motorcycle for which he had not yet applied for a personalized license plate, Plaintiff intends to apply for different personalized plates for her current car (after the issuance of the '8THEIST' plate) and for her daughter's future car, which is, according to the MVC, "one step removed" from the standing alleged in *Matwyuk*. State's Br. at 9–10. However, even if this Court discounts Plaintiff's intention to apply for a license plate on behalf of her daughter once her daughter possesses a car, there is no meaningful distinction to be drawn between

---

[8] See *supra* note 6.

applying for a plate on a different vehicle and applying for a different plate on the same vehicle, in terms of one being more speculative than the other.

As to the other two parts of the test for assessing constitutional standing—causality and redressability—the State does not argue that Plaintiff fails to meet them, and an independent review of Plaintiff's Amended Complaint reveals that Plaintiff satisfies the remaining elements of constitutional standing. Plaintiff has sufficiently alleged that the Rule caused her injury-in-fact, and Plaintiff has also sufficiently alleged that her injury-in-fact is redressable—for example through declaratory judgment or an injunction. *See, e.g.*, *Freedom from Religion Found., Inc. v. Saccone*, 894 F.Supp. 2d 573, 582 (M.D. Pa. 2012). Thus, Plaintiff has successfully alleged constitutional standing to bring her claims.[9]

As to prudential standing, Plaintiff meets the "relaxed" prudential standing requirements that apply to raising a facial overbreadth claim. *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 238 (3d Cir. 2010) ("The Supreme Court rather freely grants standing to raise overbreadth claims, on the ground that an overbroad . . . regulation may chill the expression of others not before the court.") (quoting *Amato v. Wilentz,* 952 F.2d 742, 753 (3d Cir. 1991)). Regarding Plaintiff's other claims—void for vagueness and prior restraint—the prudential standing requirements do not appear to be relaxed for such claims. As such, Plaintiff is free to raise these claims on her own behalf, though not on behalf of others. *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 n.14 (3d Cir. 1992) ("The overbreadth doctrine permits a person who is not himself injured to raise the constitutional rights of others. As a practical matter, it is a standing doctrine. The void for

---

[9] The Court notes that the parties merely lump their standing arguments together and do not separate their arguments as they potentially relate to Plaintiff's individual claims of facial overbreadth, void for vagueness, and prior restraint without sufficient procedural safeguards. *See generally* State's Br., Pl.'s Opp. Br.

13

vagueness doctrine, on the other hand, requires the person raising it to show that he himself has been injured by the overly broad language.") (internal citation omitted); *cf. CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1276 (11th Cir. 2006) (distinguishing between the standing requirements for facial overbreadth and prior restraint claims).

Therefore, the MVC's motion to dismiss is denied on the basis of lack of standing, because Plaintiff has sufficiently alleged standing to bring her claims.[10]

### b.  *Failure to State a Claim*

In the alternative, the MVC contends that Plaintiff has failed to state a claim in her Amended Complaint.[11] The Court will proceed by analyzing the sufficiency of each count of the Amended Complaint, in turn.

---

[10] At the outset of its standing argument, the MVC appears to concede that Plaintiff has standing to bring her facial overbreadth claim if "the Rule 'vests unbridled discretion in' the MVC." State's Br. at 7 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755 (1988)). However, the State apparently argues that Plaintiff has failed to establish that the Rule vests such discretion in the Commission by contending that (1) "the MVC's 'well-established practice' in reviewing personalized license plate applications is to 'look for profanity, obscenity, vulgarity, and sexual references,'" and "[t]his limitation adequately safeguards against viewpoint discrimination in the MVC's issuance of personalized license plates," and (2) "[t]he only application that the MVC allegedly denied under the Rule was the one for 'ATHE1ST' and '[o]ne denied application does not amount to repeated refusals." State's Br. at 8 (quoting Prasak Certif. ¶ 6).

However, the argument about whether the Rule indeed vests the Commission with "unbridled discretion," is one suited to inclusion in a motion for summary judgment, not a motion to dismiss—it requires the Court to make findings on facts not asserted in the Amended Complaint and more properly developed in discovery, particularly because the Prasak certification raises issues of practice and application of the Rule. *Compare* FED. R. CIV. P. 12(b) with *id.* 56; *see also Rehab. Inst. of N. Jersey, Inc. v. Home Depot Inc.*, Civ. No. 12–4035 SRC, 2012 WL 5944658, at *2 (D.N.J. Nov. 27, 2012) ("An argument that relies on proof of facts outside the Complaint cannot succeed on a motion to dismiss."). Therefore, I decline to consider whether the Rule vests the Commission with "unbridled discretion" on this motion. See also *supra* note 6.

[11] The Court notes that the MVC's argument in support of its motion to dismiss for failure to state a claim is limited to a single paragraph cursorily arguing that Plaintiff's "claims for relief do no more than state ultimate legal conclusions." State's Br. at 14. And, in the MVC's reply, the MVC appears to argue that it is Plaintiff's burden to explain in her opposition brief how the allegations

Count One of the Amended Complaint asserts that the Rule is facially overbroad. "The First Amendment overbreadth doctrine states that '[a] regulation of speech may be struck down on its face if its prohibitions are sufficiently overbroad—that is, if it reaches too much expression that is protected by the Constitution. A policy can be found unconstitutionally overbroad if there is a 'likelihood that the statute's very existence will inhibit free expression to a substantial extent.'" *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 241 (3d Cir. 2010) (*quoting Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 258 (3d Cir. 2002)). "[T]he Court has permitted a party to challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker . . . ." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992).

Here, the Court finds that Plaintiff has alleged sufficient facts to state a claim that the Rule is facially overbroad, because Plaintiff has alleged that the Rule delegates "unbridled discretion" to the MVC that "invites viewpoint discrimination," and has provided numerous factual assertions in support of this allegation, such as her own experience in applying for an '8THEIST' license plate and a 'BAPT1ST' plate, as well as the experience of her fellow atheist Silverman in applying for an 'ATHE1ST' plate. *See generally* Am. Compl. Further, the MVC has not successfully carried its burden in establishing otherwise. Though the MVC claims it denied Plaintiff's '8THEIST' plate due to a "computer error" and that the Rule does not vest the MVC with "unbridled discretion," such assertions do not negate Plaintiff's factual allegations at the motion to dismiss stage. See

---

in the Amended Complaint sufficiently state the claims she asserts. *See* State's Reply Br. at 7–8. However, "[o]n a motion to dismiss for failure to state a claim, a '*defendant* bears the burden of showing that no claim has been presented.'" *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11-4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012) (quoting *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (emphasis added)).

*supra* note 10. Therefore, I deny the MVC's motion to dismiss Count One for failure to state a claim.

In Count Two, Plaintiff asserts that the regulation in question vests the Commission with "unbridled discretion" in violation of the First and Fourteenth Amendments. However, as Plaintiff herself notes in her opposition brief, "[c]ases dealing with 'unbridled discretion' are treated as a subset of 'overbreadth' cases." Pl.'s Opp. Br. at 15; *see also 832 Corp. v. Gloucester Twp.*, 404 F. Supp. 2d 614, 627 (D.N.J. 2005) ("Facial overbreadth attacks have been allowed where a litigant argues that a licensing ordinance vests a government official with standardless discretion over whether to permit or deny expressive activity, or that a statute places improper restrictions on the time, place and manner of expressive conduct . . . .") (internal citations omitted). Plaintiff does not meaningfully distinguish between Counts One and Two, either in her Amended Complaint or in her briefing, and the Court finds that "unbridled discretion" is not a cause of action that is separate from a claim of facial overbreadth. Therefore, I grant the MVC's motion to dismiss Count Two, for failure to state a claim.

In Count Three, Plaintiff asserts a claim that the Rule is void for vagueness. "A regulation is void for vagueness if it (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Ryan v. Scism*, 474 Fed. App'x 49, 52 (3d Cir. 2012) (quoting *Hill v. Colorado,* 530 U.S. 703, 732 (2000)). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

Here, Plaintiff has asserted sufficient facts to allege that the Rule authorizes or even encourages arbitrary and discriminatory enforcement. Plaintiff has alleged that the Rule's "terms are not

16

clearly defined such that a person can readily identify the applicable standard for permitted and prohibited expressions, and because its lack of clear standards and objective criteria allows government officials to limit speech on ambiguous, subjective, arbitrary or discriminatory grounds." Am. Compl. ¶ 48.  In support of this allegation, Plaintiff provides factual assertions relating to the MVC's initial enforcement of the Rule against her '8THEIST' plate, in contrast to the MVC's immediate approval of her proposed 'BAPT1ST' plate. *See generally id.* Therefore, the Court denies the MVC's motion to dismiss Count Three for failure to state a claim.

Finally, in Count Four, Plaintiff asserts a claim that the Rule is a prior restraint. "To strike down a law as an unconstitutional prior restraint, the law under scrutiny must at least require government approval before engaging in speech, and the law must give the government discretion to grant or deny the approval." *Nat'l Ass'n for the Advancement of Multijurisdictional Practice (NAAMJP) v. Castille*, No. CIV.A. 13-7382, 2014 WL 6988595, at *19, --- F.Supp. 3d. --- (E.D. Pa. Dec. 11, 2014) (citing *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 554 (1975)).

Here, Plaintiff alleges that the Rule constitutes a prior restraint because it prohibits license plate expressions that "'may carry connotations offensive to good taste and decency,' and/or . . . because [it] impose[s] a prior restraint on protected speech without ensuring that applicants will receive a decision on their applications and/or their requests for reconsideration within a short, specified time frame." Am. Compl. ¶ 51 (quoting N.J.A.C. § 13.20-34.3(a)(35)). In support of these allegations, Plaintiff provides factual assertions relating to her own inability to (1) obtain her '8THEIST' license plate or (2) speak to the MVC and obtain reconsideration of its decision, until commencing this lawsuit. *See generally* Am. Compl. The Court finds that Plaintiff's allegations suffice in their specificity so as to overcome a motion to dismiss; accordingly, the Court denies the MVC's motion to dismiss Count Four for failure to state a claim.

**IV.	Conclusion**

The MVC's motion to dismiss is denied in part and granted in part. Count Two of the Amended Complaint is dismissed for failure to state a claim; all other claims may proceed. An appropriate order shall follow.

Dated: May 12, 2015	/s/ Freda L. Wolfson
	The Honorable Freda L. Wolfson
	United States District Judge